# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**KHALFANI M. ATKINSON,**

      **Petitioner,**

**v.**                                          **Civil Action No. 1:06cv19**
                                                     **Criminal Action No. 1:02cr36**
                                                         **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

      **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

### I.   Procedural History

The petitioner initiated this § 2255 habeas corpus proceeding *pro se* on February 7, 2006.

In the petition, the petitioner raises the following grounds for relief:

(1) Guilty plea was unlawfully induced or not made voluntary or with understanding of consequences because:

    (a) The Court had a duty to inform petitioner of the deportation consequences at his Rule 11 hearing,
    (b) There was a secret agreement not to pursue a leadership role enhancement, and
    (c) Prosecutor did not disclose all of the material terms or promises of the plea agreement;

(2) The drug quantity, which was used to increase petitioner's sentence, was not determined by the grand jury in violation of the petitioner's Due Process rights;

(3) Prosecutor mislead the Court at sentencing by introducing hearsay statements of co-conspirators and introducing perjured testimony in violation of the Due Process Clause of the United States Constitution; and

(4) Ineffective Assistance of Counsel because:

    (a) Counsel misrepresented the law by informing petitioner that his guilty plea would not have any deportation consequences, and
    (b) Counsel did not file a timely notice of appeal as instructed by petitioner.

On June 27, 2008, the undersigned issued an Opinion/Report and Recommendation which recommended that ground one (voluntariness of the plea), two (due process violation) and three (introduction of hearsay and perjured testimony) be denied and dismissed with prejudice. However, the undersigned determined that an evidentiary hearing would be necessary to properly evaluate the merits of petitioner's ground four, ineffective assistance of counsel. Therefore, an evidentiary hearing was had on September 26, 2008, at 1:00 p.m. In attendance at that hearing was the petitioner, his appointed counsel, Richard L. Walker, and Assistant United States Attorney Zelda Wesley. Testifying at the hearing, was the petitioner, and his Aunt, Angela Williams. At the close of the hearing, the parties requested permission to submit written briefs rather than have closing arguments. The petitioner filed his brief on November 10, 2008, and the United States filed its brief on December 3, 2008. On January 8, 2009, the petitioner filed a reply.

Accordingly, this case is before the undersigned for a report and recommendation on ground four of the petition, ineffective assistance of counsel.

## II. Standard of Review

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

With respect to a claim of ineffective assistance of counsel, in Strickland v. Washington, 466

U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland, *supra* at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. *Id.* at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, a defendant who has pleaded guilty must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, *supra* at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. *Id.* at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

1. Failure to File an Appeal

The Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993).

In rendering this decision, the Court opined:

Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S.Ct.917, 8 L.E.2d 21 (1962). In

addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 917, 8 L.Ed.2d 811 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

*Id.* at 41.

Further, in Roe v. Flores-Ortega, 528 U.S. 470 (2000), the United States Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Flores-Ortega, at 478.

### 2. Deportation Consequences of Plea

"[A]n attorney's failure to advise a client that deportation may result from a conviction does not constitute ineffective assistance of counsel. United States v. Yearwood, 863 F.2d 6, 7-8 (4th Cir. 1988) (citing United States v. Campbell, 778 F.2d 764, 768 (11th Cir.); United States v. Gavilan, 761 F.2d 228 (5th Cir. 1985); United States v. Santelises, 509 F.2d 703, 704 (2d Cir. 1975)). However, counsel may be ineffective for affirmatively misleading a defendant of the immigration consequences of a plea. See United States v. Gajendragadkar, 149 F.3d 1171, 1998 WL 352866 (4th Cir. 1998) (unpublished); see also United States v. Kwan, 407 F.3d 1005, 1015-1017 (9th Cir. 2005) (citing United States v. Couto, 311 F.3d 170, 187-188 (2d Cir. 2002) (affirmative misrepresentation regarding immigration consequences is deficient under Strickland)); Briscoe v. United States, 432 F.2d 1351, 1353 (D.C.Cir. 1970) ("Under appropriate circumstances the fact that a defendant has been mislead as to consequence of deportability may render his guilty plea subject to attack.")).

4

## III. Analysis

### A. Failure to File Appeal

Under United States v. Peak, supra, had the petitioner requested his attorney file an appeal, and the attorney failed to do so, counsel would have been *per se* ineffective and the petitioner would unequivocally be entitled to § 2255 relief. However, the testimony at the evidentiary hearing clearly established that neither the petitioner, nor any family member, ever requested that counsel file an appeal on his behalf.

At the evidentiary hearing, the petitioner testified that from his communication with his attorney, he knew that there was an appeal procedure, but that he did not understand exactly what that process entailed. § 2255 Hrg. Trans. (dckt. 32) at 18. Moreover, the petitioner testified that his attorney advised him that he could appeal his sentence if it did "not turn out to be correct or if it's too long." *Id.* Furthermore, at the petitioner's plea hearing, he was advised by the Court of his right to appeal. See Plea Trans. (dckt. 338) at 17-18, 23. The petitioner was again so advised at sentencing. See Sent. Trans. (dckt. 339) at 90-91. Accordingly, although he may not have understood the process of appeal, the petitioner was aware that such an option was available in certain limited circumstances.[1]

The petitioner further testified at the evidentiary hearing that he was emotionally distraught after he was sentenced. § 2255 Hrg. Trans. at 23. The petitioner asserts that his attorney knew he was distraught and even tried to comfort him after the sentence was pronounced. *Id.* At that point, the petitioner asserts that he asked his attorney what could be done about his sentence. *Id.* at 23-24.

---

[1] The petitioner's plea agreement contains a waiver of appellate rights. See Plea Agreement (dckt. 278) at ¶ 11.

Moreover, the petitioner requested that his attorney "come downstairs" and speak to him.[2] *Id.* at 24. At the evidentiary hearing, the petitioner could not recall what his exact words to his attorney were after sentencing. *Id.* In fact, the petitioner admitted that he would not have asked his attorney to take any particular course of action because his knowledge of the law was too limited at that time. *Id.* Instead, the petitioner asserts that his attorney should have consulted with him and explained the next steps and procedures given the fact that the petitioner was clearly upset by the outcome of his sentencing. *Id.* The petitioner further testified that even without a specific instruction for counsel to file an appeal, that given the circumstances, it would have been reasonable for counsel to conclude that he wanted an appeal filed. *Id.* at 25. In fact, the petitioner asserts that he expected his counsel to come to the Marshal's Service and discuss his options, but that counsel failed to do so. *Id.* However, the petitioner asserts that immediately after sentencing, he telephoned his family and requested that they instruct counsel to file an appeal. *Id.* The petitioner then testified that he did not discover that an appeal had not been filed until he reached a federal institution. *Id.* at 26.

The petitioner's Aunt testified that she stayed apprised of the petitioner's criminal proceedings and attended at least one of his court hearings and his sentencing. *Id.* at 6-7. Ms. Williams further testified that the petitioner's sentence was much greater than was expected. *Id.* at 8. Therefore, after the petitioner's sentencing, Ms. Williams and the petitioner's family spoke to Mr. Russo, the petitioner's lawyer. *Id.* at 9. Ms. Williams testified that during that conversation, Mr. Russo told the petitioner's family that an appeal could be made to lessen the sentence. *Id.* Moreover, Ms. Williams testified that the family expressed an interest in Mr. Russo following through on such an appeal. *Id.* In fact, Ms. Williams testified that Mr. Russo told the petitioner's

---

[2] After the evidentiary hearing, the petitioner was taken to a holding cell in the lower level of the courthouse by the United States Marshal Service.

family that he would "start the paperwork" immediately. *Id.* Ms. Williams testified that based on this conversation, it was her belief that an appeal would be filed on the petitioner's behalf. *Id.* at 10. Moreover, Ms. Williams testified that she spoke with the petitioner at a later date and that the petitioner expressed his wish to have an appeal filed and to get his time lessened through the drug program and boot camp. *Id.* at 11.

However, on cross-examination, Ms. Williams admitted that the conversation with Mr. Russo after the petitioner's sentence was about boot camp and the drug program. *Id.* at 11. Ms. Williams testified that what the family was really concerned about was the length of the sentence the petitioner received, and ways in which his time could be lessened. *Id.* Ms. Williams further testified that what Mr. Russo told the petitioner's family was that programs such as boot camp and the drug program could be used to lessen the petitioner's time. *Id* at 12. According to Ms. Williams, she equates these things to an appeal. *Id.* In other words, Ms. Williams believed that an appeal would get the petitioner into either boot camp or the drug program and help lessen his sentence. *Id.*

Upon further questioning by the Court, Ms. Williams testified that the only time she spoke to Mr. Russo was immediately following the petitioner's sentencing. *Id.* at 14-15. Moreover, when asked, Ms. Williams could not recall exactly what Mr. Russo's words were to the petitioner's family. *Id.* Instead, Ms. Williams stated that Mr. Russo spoke about what could be done so that the petitioner did not actually have to spend that length of time in prison. *Id.* Ms. Williams further testified that when asked what could be done to reduce the petitioner's sentence, Mr. Russo only told the petitioner's family of the drug program and boot camp. *Id.* Ms. Williams did not state that Mr. Russo made any actual mention of an appeal.

Mr. Russo's conversations with the petitioner's family, coupled with the fact that the

petitioner waived his right to appeal in his plea agreement, belie the fact that Mr. Russo was ineffective for not filing an appeal. It does not appear that Mr. Russo was given an express instruction to file an appeal.[3] Rather, the conversation after the petitioner's sentence focused on ways in which the petitioner may serve less time, such as the drug program or boot camp. Knowing that your client is upset about the length of his sentence, or that he seeks ways in which to lessen the service of his sentence, is entirely different from knowing he wants an appeal filed. Moreover, the fact that the petitioner's family was interested in programs such as drug rehabilitation and boot camp to lessen the time petitioner would actually serve does not equate with the filing of the appeal, whatever the belief of the family. Consequently, the testimony at the evidentiary hearing simply does not establish, by a preponderance of the evidence, that Mr. Russo was asked to file an appeal and therefore it cannot be concluded that he acted unreasonably by not filing an appeal.

### B. Immigration Consequences of Plea

At the evidentiary hearing, the petitioner testified that he was born in Jamaica and is a citizen of that country. § 2255 Hrg. Trans. at 17. The petitioner has lived in the United States for almost 12 years. *Id.* The petitioner testified that upon the termination of his sentence, he will be subject to deportation proceedings. *Id.* at 27. The petitioner further testified that he does not believe that his charge, aiding and abetting .28 grams of crack cocaine is a deportable offense. *Id.* at 28. Instead, it is the petitioner's understanding that it is the amount of crack cocaine to which he pled guilty that has subjected him to deportation proceedings. *Id.* Petitioner has not yet completed serving his federal sentence. Although he has been advised he is subject to deportation upon completion of his

---

[3] When asked on cross-examination when he first asked Mr. Russo to file an appeal, the petitioner stated that he "never got a chance to expresses [his] wishes to [Mr. Russo] about an appeal." § 2255 Hrg. Trans. at 52.

sentence, deportation proceedings have not been initiated. Notwithstanding Petitioner's view that the crime he pled guilty to is not a deportable offense, "[t]he INA defines an 'aggravated felony' to include 'illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924 ( c )of Title 18).' 8 U.S.C. § 1101(a)(43)(B). A drug trafficking crime, according to section 924 ( c ) of Title 18, is defined to include 'any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.)...'" Evola v. Carbone, 365 F.Supp.2d 592, 594-595. Inasmuch as Petitioner was convicted on his plea of guilty of the crime of distribution of a controlled substance under federal law, an "aggravated felony", he will be subject to the possibility of deportation proceeding once he has completed his federal sentence.

The petitioner testified during his criminal proceedings that he was concerned about how his conviction would affect his immigration status. *Id* In fact, the petitioner stated he was so concerned over his immigration status that he discussed the issue with Mr. Russo on more than one occasion. *Id.* at 28-29. "[T]he first time the conversation occurred, was during our very first conference, when he flew down from New York to see me and discuss the plea agreement. And it wasn't - it wasn't in great detail because we were discussing the other issues of the case, the amount of time, the amount of drugs, and he was trying to figure out a strategy where we should, in fact or I should, in fact, sign this plea agreement or not. But I did ask him, you know, what happens after I plead guilty? What's going to happen to my status in this country." And at that point he kind of said, 'You know, not to worry about it, it won't affect you based on his experience.'" *Id.* at 28-29. Importantly, the petitioner next questioned Mr. Russo about the impact of his plea on his immigration status at his plea hearing. "And then the other conversation was actually during the plea hearing, It was during that plea hearing that I specifically turned to him and I asked him, and

9

I said, 'You know, am I going to be deported after this?' 'Am I going to still be able to become a United States citizen?. And that's when he said to me, 'You know, don't worry about it, you'll still be able to remain a United States citizen based on my experience, I have never seen this happen.' 'So don't worry about it, just go ahead and plead guilty." *Id.* The petitioner also testified that Mr. Russo lead him to believe that he was experienced with drug cases and people from other countries and that he was capable of giving appropriate advice on the immigration issue. *Id.* at 30. The petitioner testified that Mr. Russo's advice as to his immigration status played a factor in his decision to plead guilty. *Id.* at 31. The petitioner testified that he did not find out he was actually deportable until he was in custody in Philadelphia post sentencing and spoke with another Jamaican inmate. *Id.* at 30-31. The petitioner testified that if given accurate advice as to his immigration status, he would have done things differently. *Id.* at 31.

On cross-examination, the petitioner conceded that he knew he was not a United States citizen at the time of his plea, and that there were laws in place at that time which rendered aliens deportable if convicted of certain crimes. "What I knew at that point, was that there is some law out there that renders you deportable, if you are convicted of some type of crime. I wasn't sure the intricacies of how that works, but I knew that people got deported or were facing deportation if they got convicted for certain crimes. I, of course, weren't convicted of a crime before that so I - - you know, I wasn't sure about the specifics." *Id.* at 54. However, even though the petitioner asserts that he did not know what crimes they were or if his conviction would render him deportable he admitted that he was certain there was a possibility of deportation. *Id.* at 54-55. The petitioner later clarified that this basic knowledge was one of the reasons why he questioned Mr. Russo about the possibility of deportation. *Id.* at 55. Moreover, the petitioner testified that if he was deported, he would be

10

totally banished from his family. *Id.* In addition, the petitioner would face hard economic times because of the social and economic conditions in Jamaica. *Id.* at 55-56. The petitioner testified that prior to his incarceration, he was working, making a good living and supporting himself. *Id.* at 56. However, should he be deported, the petitioner testified that he would not have the same ability in Jamaica. *Id.* at 56-57. These are the reasons the petitioner sought immigration advice from Mr. Russo. *Id..* at 55 and 57.

Upon further questioning by the Court, the petitioner testified that he was named in two counts of the indictment. *Id.* at 61-62. Further, the petitioner confirmed that count one was a drug conspiracy count that if convicted, carried a penalty of 10 years to life in prison. *Id.* at 62. When directly asked if he would have proceeded to trial if not for the bad advice from Mr. Russo, the petitioner testified that he would have because everything he would have given up, would have outweighed what he received. *Id.* at 64. Particularly, the petitioner testified that by pleading guilty, and facing certain deportation, he has given up a tremendous part of the life he has already built in this county. *Id.* Thus, the petitioner testified that he would have "ventured and tested the Government to try to prove their case because of everything that I am giving up and receiving so little in return." *Id.* Moreover, the petitioner testified that he is cognizant of the government's evidence against him, including potential witnesses and audio recordings. *Id.* at 64-66.

In addition, the Court questioned the petitioner as to his motives for accepting the plea agreement. *Id.* at 67-68. The petitioner testified that his attorney discussed with him the risks of going to trial as opposed to entering a plea agreement. Moreover, the petitioner also testified that there were monetary considerations. *Id.*

Petitioner responded to the following question by the Court:

11

Q. And is it safe for me to assume that your motivation in signing the plea agreement and going forward, was because the risks that you faced by going to trial were too much for you to take?
A. Coupled with the risk, Your Honor, that he did explain there was also another factor that played in my decision and it was monetarily because Russo wanted another, I believe, $15,000.00 if he were to go to trial or $20,000.00 something to that effect. So because I placed so much burden on my family and they were the ones that were paying for the - for the attorney bill, Your Honor, I - I though it would be in my best interest to alleviation some pressure from them because this was solely my actions. So that coupled with the decision and the risk, yes." *Id.* at 68.

These questions elicited further questions from counsel about the petitioner's motivation for accepting the plea. In response to such questions, the petitioner testified that there were several factors that he considered in accepting the plea agreement. *Id.* at 70. However, the petitioner testified that one of the main reasons for accepting the plea agreement was Mr. Russo's advice that he would not be subject to deportation by accepting the plea. *Id.* Finally, the petitioner specifically testified that had he known at the time he accepted the plea, that he would be unequivocally subject to deportation, he would "have made a different decision about accepting the plea agreement." *Id.*

In its response to the petitioner's post-hearing memorandum, the government asserts that petitioner's counsel was not ineffective for failing to advise him of the immigration consequences of his guilty plea. That, however, is not the issue. It is undisputed that the petitioner's counsel advised him of the immigration consequences of his plea. The petitioner's claim of ineffectiveness stems from the fact that counsel gave him patently false information that the petitioner relied on in determining whether or not to accept the plea agreement.

Next, the government asserts that because the petitioner did not produce Mr. Russo, or at the very least, produce an affidavit from him, that somehow, the petitioner cannot show that his immigration status was an important factor in his acceptance of the plea. However, the undersigned is not persuaded by this argument. The decision to accept the plea was the petitioner's and the factors that he considered in making that decision were his and his alone. The best Mr. Russo could

12

have done was verify that discussions took place between he and the petitioner regarding the consequences of the plea on the petitioner's immigration status. At the evidentiary hearing, the petitioner swore under oath to tell the truth and then testified as to his motives for accepting the plea agreement. The government could have just as easily called Mr. Russo if it wanted to rebut the petitioner's testimony. The government chose not to. Therefore, it is within the province of the Court to judge the petitioner's credibility and to determine whether his testimony is sufficient to establish his claim by a preponderance of the evidence.

The government then notes that the petitioner did not question the Court about the immigration consequences of his plea at his Rule 11 hearing. The government contends that this somehow supports the contention that the petitioner was not concerned about his immigration status. However, the testimony was that the petitioner, on at least two prior occasions, and importantly, at the Rule 11 hearing, had asked his counsel about the immigration consequences of his plea. Both times, the petitioner was assured by counsel that he would not be deported if he pleaded guilty. The petitioner, relying on those assurances, would have had no further need to question the Court. It is curious though, that during his plea hearing, the petitioner specifically asked the Court to repeat what rights he would be giving up by entering his plea. The Court explained that the petitioner would lose his right to vote, his right to hold public office, and the right to bear arms. No mention was made of his right, if he had one, to remain in this country. It is reasonable then, that the petitioner would have assumed, based on the advice of counsel, and the failure of the Court to mention his immigration status, that there would be no immigration consequences of his plea.[4] In

---

[4]This is inserted not as criticism of the Court for not mentioning the possible impact of Defendant's guilty plea, adjudication of guilt and sentence on his immigration status. The Court is not required to mention such collateral consequences. The Court was not alerted that Defendant was

fact, although it is noted several times in the petitioner's pre-sentence investigation report ("PSR")that he was born in Jamaica, even the probation office never mentioned any immigration consequences to the petitioner's conviction. See Petitioner's PSR (dckt. 316).

Finally, the government asserts that the petitioner has procedurally defaulted this claim by failing to raise it on appeal. However, claims of ineffective assistance of counsel cannot be raised on direct appeal unless the claim appears conclusively on the record. See United States v. Martinez, 136 F.3d 972 (4th Cir. 1998). In this case, the petitioner's claim is based on confidential communications between an attorney and his client. Thus, the petitioner's claim could not appear conclusively on the record and could not have been raised on direct appeal. Consequently, the petitioner has properly raised this claim under § 2255.

Turning to the merits of the *petitioner's* claim and following the well reasoned opinions of: the Ninth Circuit in Kwan, *supra*; the Fourth Circuit in Ostrander v. Green, 46 F.3d 347, 355 (1995) and Gajendragadkar, M.D., *supra;* the Second Circuit in Couto, *supra*; United States v. Avila-Peralta, 2005 WL 16300008 (E.D.Wis.), based on a totality of the evidence presented at the hearing, it is clear to the undersigned that Mr. Russo's performance fell below an objective standard of reasonableness. The petitioner specifically asked Mr. Russo about the immigration consequences of his plea. Mr. Russo expressed that he was familiar with immigration issues and then provided the petitioner with patently false information. The United States did not offer an affidavit or testimony of Attorney Russo in rebuttal. With respect to the first prong of the Strickland test, the undersigned finds that the aforementioned facts of this case are distinguishable from those of:

---

concerned about his immigration status. The Court was not alerted that Mr. Russo had given Defendant incorrect information with respect to the impact Defendant's conviction would have on his immigration status.

United States v. Granmayeh, 31 F.Supp.2d 529 (D.Maryland, 1999) wherein the Court rejected Defendant's claim of an improvident guilty plea due to counsel's advice that Defendant was subject to deportation but would not be deported because the US was not deporting to Iran because the court in its plea colloqy advised Defendant there was a possibility he could be deported; Mohamud v. United States, 2006 WL 1867298 (N.D.W.Va.) wherein District Judge Stamp determined that, although the defense counsel in the case advised Defendant that he would not be deported based on his plea to an ITAR charge, the fact that Defendant knew before sentence from an INS transcribed message that he could be deported coupled with probation's inclusion in the PSR and the Judge's colloquy during sentencing that deportation was an issue for immigration to further investigate and that Defendant did not then seek to withdraw his guilty plea further or claim he had been told he could not be deported coupled with Defendant's failure to present evidence at the Magistrate Judge's evidentiary hearing that but for the erroneous advice of his counsel he would have rejected the plea offer and gone to trial; and Gumangan v. United States, 254 F.3d 701 (8th Cir, 2001) wherein the Court held a writ of error coram nobis was not appropriate particularly in light of the fact that Defendant's guilt was never in doubt and he had received substantial considerations in his plea agreement.

That does not end the Court's inquiry, however. The undersigned, finding that Mr. Russo's performance was deficient, must now turn to the second prong of Strickland to determine whether the petitioner suffered any prejudice. In order to establish prejudice with regard to a plea agreement, the petitioner must only show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, *supra.* The petitioner, under oath, has testified that had he received proper advice as to the

immigration status of his plea, he would not have pleaded guilty. Further, the undersigned finds the petitioner's testimony at the evidentiary hearing to be credible. Being that there is nothing in the record and no evidence was offered by the government to contradict the petitioner's testimony that he would have proceeded to trial but for counsel's bad advice, the undersigned is constrained to find that counsel was ineffective in this case. The undersigned reviewed the transcript of the plea hearing conducted before District Judge Keeley and finds further corroboration for Petitioner's testimony. After being advised of all of the rights Petitioner was sacrificing by pleading guilty, Defendant was asked the following and gave the following responses:

Court: "Do you have any questions for your attorney or for me?"

Defendant: "If you could just go over the two things that I would lose if I am convicted of a felony, in terms of the federal rights. You said I won't be able to vote?"

Court: "You mean on your appellate rights?"

Defendant: "No, no. You said I won't be able to vote and the other one was?"

Court: "You can't hold public office."

Defendant: "Okay. And those are the only two?"

Court: "As to your federal rights?"

Defendant: "Yes."

Court: "Correct."

Defendant: "Okay."

Mr. Russo: "Your Honor, can I just have one moment, please?"

Court: "Yes."

After a pause the Court, at the suggestion of the AUSA, advised Defendant that he also lost

16

his right to bear arms, a gun because "convicted felons are not allowed to possess weapons."

Defendant Responded: "Okay."

Court: "Does either side know of any other rights that I've overlooked."

Mr. Russo: "No, Your Honor."

The above colloquy between the Court, Petitioner/Defendant and his counsel supports Petitioner's testimony that during his plea hearing that he turned to his counsel and asked if he was going to be deported because he was pleading guilty. A review of the entire plea hearing transcript reveal that this is the only occasion which Defendant/Petitioner and / or his counsel seek permission of the Court to speak with each other. The request to confer occurs at the point when the Court is advising the Defendant of the federal rights he is giving up or losing by pleading guilty. It would be reasonable for Defendant/Petitioner at that time to consider whether he was losing the right to try to become a US citizen as a federal right.

Although United States v. Gajendragadkar, *supra*, is unpublished, and therefore, not binding on this Court, it is some indication of how the Fourth Circuit would rule on this issue on appeal. Thus, the undersigned finds the decision in Gajendragadkar persuasive in this case. In Gajendragadkar, the defendant plead guilty to two counts of mail fraud with losses estimated at $40,000 to $70,000. Gajendragadkar, *supra* at 1. At the time of his plea, mail fraud was considered an aggravated felony, and therefore, a deportable offense, if the amount of loss exceeded $200,000. *Id.* Therefore, the defendant accepted a plea to both charges with the understanding that he would not be deported. *Id.*

However, 14 days after the defendant pleaded guilty, Congress retroactively amended the immigration laws related to mail fraud by reducing the amount of loss for aggravated felonies from

$200,000 to $10,000. *Id.* Thus, the defendant was informed that he was being investigated for deportation. *Id.* Consequently, the defendant filed a § 2255 motion asserting that counsel was ineffective for providing him the misinformation as to the deportation consequences of his plea. *Id.* The Fourth Circuit, citing Ostrander v. Green, *supra* at 335 (4th Cir. 1995), found that counsel's performance "falls below prevailing standards of professional competence where counsel misinforms the defendant about a legal consequence of a plea agreement, even if the consequence might otherwise have been described as 'collateral.'" Gajendragadkar, *supra* at 2.

As to the second prong of Strickland, the Court described the test as "'whether a reasonable defendant in [Dr. Subhash's] shoes, having asked for, received, and relied upon encouraging advice' about the risks of deportation, 'would have pled guilty anyway had he known' that his attorney was mistaken.'" Gajendragadkar at 2 (quoting Ostrander v. Green, 46 F.3d at 356). Because concerns of deportation were foremost in the Defendant's mind during the plea bargaining process, the Fourth Circuit found there was a reasonable probability that but for the misinformation from counsel, the defendant would have proceeded to trial. *Id.* In making this finding, the Court noted that the defendant was a 22-year resident alien, his family was in the United States and he had an established medical practice in the United States. *Id.* The Court further noted that although going to trial would still carry the risk of deportation, it would provide the defendant with an opportunity to test the government's evidence and to challenge the government's estimate of loss. *Id.*

The petitioner in this case is very similar to the defendant in Gajendragadkar. The testimony from the evidentiary hearing establishes that the immigration consequences of his conviction were on his mind when he was meeting with his counsel to review the plea agreement and later at the plea hearing as an important factor in determining whether to accept the plea bargain agreement and

plead guilty. Moreover, the defendant asked for and received encouraging advice from his counsel. In fact, the conduct of Mr. Russo in this case is more egregious than that of counsel in Gajendragadkar. In Gajendragadkar, counsel actually properly advised his client at the time the plea agreement was negotiated. It was the retroactive application of a new law that rendered such advise false. In this case, Mr. Russo affirmatively misadvised the petitioner as to a law that had been in effect for some time. Had he not known the immigration consequences of the petitioner's plea as he held out, then he should have researched the issue and would have easily discovered that under the Immigration and Nationality Act ("INA"), a drug offense automatically results in deportation.[5]

In addition, like the defendant in Gajendragadkar, the petitioner here has been a resident alien for a substantial period of time. All or most of his family resides in the United States and he had established work opportunities and was self-supporting prior to his incarceration. Although the petitioner faced a possible life sentence without the plea, the petitioner asserts that he would have risked such a sentence and put the government to its burden of proof had he known he would be deportable by agreeing to plead guilty. Such is the petitioner's right. While not every defendant would be willing to risk such a sentence and the potential of deportation if convicted, the particular facts of this case, and the testimony provided at the evidentiary hearing, indisputably show that this petitioner would have. Therefore, the undersigned finds that there is a reasonable probability that the petitioner in this case would not have pleaded guilty had he been given accurate advice about the risks of deportation.

---

[5] The petitioner pleaded guilty to distribution of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Plea Agreement (dckt. 278) at 1. An alien convicted of an "aggravated felony" is removable pursuant to the INA. See 8 U.S.C. § 1227(a)(2)(A)(iii). Under the INA, an aggravated felony is defined as "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." See 8 U.S.C. § 1101(43)(B).

#### IV. Recommendation

For the foregoing reasons, the undersigned recommends that the Court **GRANT** the petitioner's § 2255 motion as to ground four, ineffective assistance of counsel, to the extent that the petitioner asserts that counsel was ineffective for affirmatively misleading the petitioner as to the immigration consequences of his plea. In light of this finding, the undersigned further recommends that the Opinion/Report and Recommendation entered on June 27, 2008, be **WITHDRAWN** and that Atkinson be permitted the opportunity to withdraw his guilty plea.

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v.Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Order to counsel of record via electronic means.

DATED: February 10, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE